## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| REV. NOLAN MCKENZIE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No. 08-2510-JAR |
| CITIBANK (SOUTH DAKOTA), NA, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

This matters comes before the Court on defendant Citibank (South Dakota), NA's Motion for Summary Judgment (Doc. 32). The motion is fully briefed, the Court has reviewed the parties' submissions and is prepared to rule. For the reasons set out in detail below, defendant's motion is granted in part and denied in part.

## I.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

---

[1]Fed. R. Civ. P. 56(c).

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]  "On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim entitling it to judgment as a matter of law."[7]  If the moving party bears the burden of proof, it will only be entitled to summary judgment if "evidence is presented that 'the jury would not be at liberty to disbelieve.'"[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Spires v. Sunflower Elec. Co-op., Inc.*, 280 F. Supp. 2d 1271, 1276 (D. Kan. 2003).

[8]*Crane Constr. Co. v. Klaus Masonry*, 71 F. Supp. 2d 1125, 1127 (D. Kan. 1999) (citing *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996)).

[9]*Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[11]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]  Rule 56(e) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14]

When deciding a summary judgment motion, the Court may consider evidence submitted, if admissible in substance, even if it would not be admissible in form, at the trial.[15]  The Tenth Circuit has explained,

> Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form.  Nonetheless, "the content or substance of the evidence must be admissible."  Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form.  The requirement that the substance of the evidence must be admissible is not only explicit in Rule 56, which provides that "[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence," Fed. R. Civ. P. 56(e), but also implicit in the court's role at the summary judgment stage.  To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be

---

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[12]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[13]Fed. R. Civ. P. 56(e).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15]*Argo*, 452 F.3d at 1199.

available to the jury.[16]

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[18]  The party opposing summary judgment is required to state which facts are in dispute and refer specifically to those portions of the record upon which he relies.[19]  "The court may, *but is not obligated to*, search for and consider evidence in the record that would rebut the movant's evidence, but that the opponent has failed to cite."[20]  However, unless the movant's statements of material fact are specifically controverted, they shall be treated as admitted.[21]

Finally, when examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[22]  Furthermore, the record is to be viewed in the light most favorable to the nonmoving party.[23]  Therefore, the Court will

---

[16]*Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995); Fed. R. Civ. P. 56(e)) (citations omitted).

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[18]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[19]D. Kan. Rule 56.1(b)(1).

[20]*Vasquez v. Ybarra*, 150 F. Supp. 2d 1157, 1160 (D. Kan. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998)) (emphasis in original).

[21]*Id.*

[22]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[23]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir.2001).

assume the nonmoving party's evidence to be true, determine all doubts in the nonmovant's favor, and draw all reasonable inferences in the nonmovant's favor.

Because plaintiff McKenzie pursues this action *pro se*, the Court must remain mindful of additional considerations. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[24] However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."[25] For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[26] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[27] Moreover, litigants are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*.[28] *Pro se* litigants must follow rules of procedure, including local rules.[29] Plaintiff's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment.[30]

## II. Uncontroverted Facts

The Court begins by noting that plaintiff has filed numerous documents in response to defendant's motion to summary judgment beyond the time permitted by this district's local rules.

---

[24]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 1972)).

[25]*Id.*

[26]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991).

[27]*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.1997).

[28]*Ogden v. San Juan County*, 32 F.3d 452, 452, 455 (10th Cir. 1994), *cert. denied*, 513 U.S. 1090 (1995).

[29]*Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993); *Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1097 n.10 (D. Kan. 2003).

[30]*See Nothington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

To the extent these filings are an effort to respond to defendant's motion for summary judgment, defendant requests the Court disregard them as untimely.[31]  Although plaintiff is proceeding *pro se*, the Court cannot provide arguments for him or permit him to bend the rules of litigation.[32]  Therefore, in resolving defendant's motion for summary judgment, the Court will review and consider documents filed by plaintiff beyond the time allowed by D. Kan. R. 6.1(d)(2) only as necessary to understand his claims.[33]

Based on the timely filings of both parties, defendant points out that plaintiff's response to defendant's motion for summary judgment has not controverted any of the facts set out in defendant's statement of uncontroverted facts.  Rather, in response, plaintiff submitted his

---

[31](Doc. 66.)

[32]*Ellibee v. Hazlett*, No. 03-3023-JAR, 2006 WL 3050801, at *2 (D. Kan. Oct. 23, 2006) (noting that *pro se* litigants are governed by the same procedural rules as other litigants; on summary judgment, the Court accepts as true facts which a *pro se* litigant does not controvert); *see also Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (holding that *pro se* litigants must "follow the same rules of procedure that govern other litigants").

[33]Kansas District Court Rule 6.1(d)(2) states, "Responses to motions . . . for summary judgment shall be filed and served within 23 days.  Replies shall be filed and served within 23 days of the service of the response."  D. Kan. R. 6.1(d)(2).  Defendant filed its motion for summary judgment on May 6, 2009.  Plaintiff filed the following responses: "This Motion Sets Forward to Strike Defendant's Memorandum and its Sanctions" (Doc. 34), filed on May 11, 2009; "Plaintiff Strikes Defendant's Motion for Summary Judgment and Defendant Citibank Suggestions in Support of Motion for Summary Judgment and To Thereof" (Doc. 38), filed on May 18, 2009; and a supplement (Doc. 39), filed on May 27, 2009.  Defendant filed "Reply Suggestions in Further Support of Its Motion for Summary Judgment" (Doc. 40) on June 5, 2009.  At this point, the summary judgment motion was fully briefed, and the Court took the matter under advisement.  Plaintiff did not make any further submissions regarding the summary judgment motion until September, long after the time prescribed by local rules.

Plaintiff made the following filings after the time period allowed by local rules: "Plaintiff's Reply to Defendant's Motion for Summary Judgment and Citibank's Suggestions in Support of Motion for Summary Judgment" (Doc. 50), filed on September 14, 2009; "Closing Remarks of Plaintiffs Replies to Defendant's Motion for Summary Judgment and Citibank's Suggestions in Support of Motion for Summary Judgment" (Doc. 51), filed on September 14, 2009; "Opening Statement," "Closing Statement," and "Pre Trial Order" (Doc. 52), filed on September 14, 2009; "Part No. 2 of Plaintiff's Brief and Memorandum" (Doc. 57), filed on September 23, 2009; "Plaintiff's Reply to Defendant's Motion for Summary Judgment and Citibank's Suggestions in Support of Motion for Summary Judgment" (Doc. 62), filed on October 5, 2009; "Closing Remarks of Plaintiffs Replies to Defendant's Motion for Summary Judgment and Citibank's Suggestions in Support of Motion for Summary Judgment" (Doc. 63), filed on October 5, 2009.  Doc. 52 appears to be plaintiff's submissions in preparation for trial.  To the extent he is attempting to respond to defendant's motion for summary judgment, the Court finds it also has been filed out of time.  Plaintiff's late submissions will only be considered as necessary to understand plaintiff's claims.

resume, numerous letters of recommendation, newspaper clippings, and his diplomas and various certificates of completion.[34]  Under Fed. R. Civ. P. 56(e)(2),

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.[35]

Here, plaintiff has not submitted any affidavits, depositions, or interrogatories, let alone any papers regarding the credit agreement or his payment history as might be construed in support of his claims.[36]  Generally, when a party fails to controvert the facts stated in the opposition's brief, those facts are taken as true.[37]  "'[U]nsubstantiated allegations carry no probative weight in summary judgment proceedings.'"[38] To the extent defendant's statements of fact are supported by the record, the Court deems them admitted.

Citibank is a successor in interest to Citibank USA, National Association.  After October 16, 2003, Citibank acquired all Sears credit card accounts previously and thereafter issued.  On February 28, 2005, plaintiff filled out an Account Application to apply for a Sears MasterCard. The Account Application bearing plaintiff's signature provides:

> By signing below, you certify that you have read and agree to the Sears

---

[34](Doc. 39.)

[35]Fed. R. Civ. P. 56(e)(2).

[36]*See* D. Kan. R. 56.1(d).

[37]D. Kan. R. 56.1(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); *Joshua W. v. Bd. of Educ. of Wichita Pub. Sch. U.S.D. No. 259*, 13 F. Supp. 2d 1199, 1205 (D. Kan. 1998).

[38]*Beams v. Norton*, 256 F. Supp. 2d 1203, 1206–07 (D. Kan. 2003) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir. 1992) (citations omitted)).

> MasterCard terms disclosed below which apply to your account and the terms of the Agreement that will be provided to you with your card(s) if credit is granted and you agree to pay all charges incurred under such terms.[39]

Around February 28, 2005, a Sears credit account was issued to Plaintiff. Defendant alleges that plaintiff thereafter received an Account Agreement containing the terms and conditions of the account.

The Account Agreement states that Citibank may close the Account "at any time for any reason without prior notice."[40] Pursuant to the Account Agreement, plaintiff is required to make monthly payments of at least the "Total Minimum Due." If those payments are not made by the listed due date, Citibank may charge a late payment fee to the account. The Agreement also prohibits a cardholder from exceeding the credit limit on the account. Exceeding the credit limit and failure to make timely payments each constitute default under the Account Agreement. The Account Agreement provides:

> If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus costs and expenses of any legal action, to the extent permitted by law.[41]

Plaintiff alleges he either discarded all paperwork he received from Sears, never received any paperwork from Sears, or could not remember whether he received any papers regarding the terms of his credit card account.[42] Nevertheless, it is uncontroverted that plaintiff executed the

---

[39](Doc. 33, Ex. B, Ex. 3.)

[40]Defendant alleges that the Account "expired" on May 2008. However, the Court is unable to find any factual support for this claim in the record provided by defendant.

[41](Doc. 33, Ex. B, Ex. 4, at 9.)

[42](Doc. 33, Ex. B, at 27:5–23, 41:14–19.)

Account Application, received a Sears MasterCard, and made charges to the account. Furthermore, plaintiff received account statements showing his account balance, any finance charges, fees, the total minimum payment due, and the due date.[43] Over the life of the account, plaintiff was repeatedly late making his scheduled payments and exceeded the credit limit on the account multiple times.

In early 2008, after ongoing failure to make timely payments, plaintiff arranged for a series of automatic debits from his bank account to be made to the credit account. The last debit payment was applied to the account in July 2008. After July 2008, Citibank alleges it continued to send account statements to plaintiff at his home address. Plaintiff admits he may have received statements, but "threw them away . . . after the time the debt collectors started calling."[44] Plaintiff made no further payments following the July 2008 debit. As of October 17, 2008, the balance on the account was $6,474.81. Plaintiff has failed to pay the $6,474.81 balance due on the account.

Citibank representatives made telephone calls to plaintiff's residence in an attempt to collect payments due on the account. Plaintiff testified at his deposition that these calls were made every day and at all times of the day, but he could not state how many times a day he was called and could not recall whether he answered the phone every time they called.[45] In the Pretrial Order, plaintiff alleged that he received an average of "five calls per night and day,

---

[43]Although plaintiff stated in his deposition that he does not "keep up with written statements," Doc. 33, Ex. B, at 43:19–20, he recognized the account statements shown to him by defense counsel, *id.* at 31:3–32:4, admitted receiving credit card statements, *id.* at 27:16–18, and recalled receiving some in the mail before discarding them, *id.* at 27:19–25.

[44](Doc. 33, Ex. B, at 27:16–28:8.)

[45](Doc. 33, Ex. B, at 14:18–15:15.)

demanding collection of debt that he allegedly owed defendant."[46]  The Court notes that plaintiff

is inconsistent as to the duration of these phone calls.  In the Pretrial Order, plaintiff alleged the

calls occurred between July 1, 2008 and September 28, 2008; in another filing, he claimed they

took place "[o]n, or about, February 28, 2005 and thereof,"[47] and in a third filing, he alleged they

occurred "during the period from the months of January 2009 to June 2009."[48]  In his deposition,

plaintiff did not remember what was said to him on the phone, but explained, "it was a typical

debt collector.  'I'm here to collect a debt,' and they tell me the name of the company and how

much money they wanted.  And that's all I can remember."[49]  Plaintiff claims he suffered mental

anguish as a result, but did not visit a physician or other healthcare provider regarding his mental

anguish.

## III.    Plaintiff's Claims and Defendant's Counterclaims

Plaintiff's Petition sets forth claims for "breach of agreement," "discontinuance of credit

account," "negligence," and "telephone harassment," alleging that Citibank has caused plaintiff

to suffer mental anguish.  Defendant alleges the Account Agreement is the sole agreement

between the parties.  Although plaintiff has not identified any particular provision of the

Agreement which Citibank may have breached, plaintiff seeks damages in the amount of

$1,545,000.

Although plaintiff has not provided evidence in support of his claims, out of an

---

[46](Doc. 46, at 3.)

[47](Doc. 52, at 6.)

[48](Doc. 62, at 2.)

[49](Doc. 33, Ex. B, at 15:9–15.)

abundance of caution, the Court has reviewed the record and plaintiff's deposition testimony[50] to decipher plaintiff's claims. Although plaintiff has not specifically controverted defendant's statement of facts, plaintiff appears to argue as follows: Plaintiff admits there was a written contract between him and defendant and admits that he made multiple late payments. As a result of incurring multiple late fees, plaintiff called a service representative and gave oral permission to the representative to make monthly withdrawals from his checking account. Plaintiff claims such automatic withdrawal payments were regular and timely, but defendant subsequently cancelled his account after learning of his credit rating with other companies. Plaintiff claims defendant's decision to cancel his credit account without notice was a breach of contract. However, plaintiff fails to point to any specific provision in the written agreement which defendant breached. In his deposition, plaintiff vaguely recalled speaking with a service representative who told him he would be "okay" so long as the company was able to make direct withdrawals each month. Plaintiff argues that this conversation created an oral agreement whereby he would be allowed to keep his credit card so long as the company could make direct withdrawals each month. He claims defendant's subsequent decision to cancel his credit account, therefore, was a breach of the oral agreement.

Citibank denies the existence of any oral contract, and insists the written contract was the only agreement it had with plaintiff. Citibank alleges two counterclaims against plaintiff for breach of contract and account stated, and asks the Court to award attorneys' fees per the terms of the Account Agreement with plaintiff.

**IV.     Discussion**

---

[50]Plaintiff's deposition testimony was attached to defendant's motion for summary judgment.

Defendant moves for summary judgment on plaintiff's four claims: (1) breach of agreement; (2) discontinuance of plaintiff's credit account; (3) negligence; and (4) telephone harassment.  Defendant also seeks summary judgment on its counterclaims for (1) breach of contract, (2) account stated, and (3) attorneys' fees and costs.

### A.    *Choice of Law*

"In a diversity action, the court applies the substantive law of the forum state, including the choice of law rules,"[51] and the forum state's rule as to whether a contractual choice-of-law provision is enforceable.[52]  "Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules.  Under Kansas law, the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue."[53]  In the absence of such a contract provision, Kansas law provides an alternative rule:  When the dispute goes to the substance of the obligation, Kansas courts apply the law of the state where the contract is made; but when the question goes to the manner and method of performance, the law of the place of performance governs.[54]  "A contract is made where the last act necessary for its formation occurs."[55]

Here, the Account Agreement between the parties includes a choice-of-law provision, stating that "[t]erms and enforcement of this Agreement shall be governed by federal law and the

---

[51]*K.R. Smith Trucking, LLC v. Paccar, Inc.*, No. 08-1351-WEB, 2009 WL 3488064, at *1 (D. Kan. Oct. 23, 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).

[52]*Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir. 1990).

[53]*Griffin v. Bank of Am.*, 971 F. Supp. 492, 496 (D. Kan. 1997) (citations omitted).

[54]*Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (citations omitted).

[55]*Novak v. Mut. of Omaha Ins. Co.*, 28 P.3d 1033, 1039 (Kan. Ct. App. 2001).

law of South Dakota, where we are located."[56]  The parties, however, have not alleged sufficient facts to show that South Dakota bears a reasonable relation to the contract and have not alleged any facts regarding where the contract was formed.[57]  Thus, the Court will apply both South Dakota and Kansas law to plaintiff's claims for breach of agreement and discontinuance of his credit card account.

"In deciding tort claims, Kansas courts follow the rule of *lex loci delicti*," whereby "tort claims will be decided by the law of the place where the tort occurred,"[58] that is, "the state in which the wrong was felt."[59]  Although a broadly written choice-of-law provision in a contract has also been held to apply to tort claims, the Court finds that the choice-of-law provision in this case is too narrow to encompass plaintiff's tort claims.[60]  Thus, the Court will apply Kansas law to plaintiff's claims for harassment and negligence.

## B.    *Plaintiff's Claims*

When plaintiff's pleadings are construed liberally, plaintiff argues that defendant breached both a written contract and an oral contract setting out the terms and conditions of his credit account.  Defendant, however, argues that the written contract was "[t]he only established

---

[56](Doc. 33, Ex. B, Ex. 4, at 13.)

[57]Defendant attached a copy of plaintiff's credit card application to its motion for summary judgment.  The application states: "By signing below, you certify that you have read and agree to the Sears MasterCard terms disclosed below which apply to your account and the terms of the Agreement that will be provided to you with your card(s) if credit is granted and you agree to pay all charges incurred under such terms."  (Doc. 33, Ex. B, Ex. 3.)  However, neither party produced facts showing when or where the contract came into existence.

[58]*K.R. Smith Trucking, LLC*, No. 08-1351-WEB, 2009 WL 3488064, at *1 (D. Kan. Oct. 23, 2009) (citing *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)).

[59]*Alpine Atl. Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1279 (D. Kan. 2008) (citing *Ling*, 703 P.2d at 735).

[60]*See Mortgage Plus, Inc. v. DocMagic, Inc.*, No. 03-2582-GTV-DJW, 2004 WL 2331918, at *7 & n.28 (D. Kan. Aug. 23, 2004) (citing numerous cases).

13

agreement between [defendant] and Plaintiff,"[61] denies the existence of any oral agreement, and argues that plaintiff has failed to support his breach of contract claim with evidence. The Court considers both the written and oral contract claims alleged by plaintiff.

## 1. Breach of Contract

After reviewing the record, and interpreting plaintiff's deposition statements generously, the Court finds that plaintiff's breach of contract claim appears to stem from (1) defendant's cancellation of his credit card account without notifying him (written contract), and (2) defendant's decision to discontinue debiting payments from plaintiff's bank account without notifying him (oral contract).

Under Kansas law, the essential elements in a breach of contract claim are: "1) the existence of a contract between the parties; 2) sufficient consideration to support the contract; 3) plaintiff's performance or willingness to perform in compliance with the contract; 4) defendant's breach of the contract; and 5) damages to plaintiffs caused by the breach."[62] The burden of proof is on the plaintiff to show the existence of the alleged contract through both offer and acceptance.[63] An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[64] If a party intends to make an offer, "[the offer] cannot be accepted so as to form a contract

---

[61](Doc. 33 at 9.)

[62]*Lindsey Masonry Co. v. Danis Envtl. Indus., Inc.*, No. 01-2477-JAR, 2003 WL 1697725, at *6 (D. Kan. Mar. 26, 2003) (citing *Commercial Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973)).

[63]*Id.* at *5 (citing *Steele v. Harrison*, 552 P.2d 957, 963 (Kan. 1976) (citation omitted)).

[64]*Id.* (citing *Bennett v. Emerson Elec. Co.*, 186 F. Supp. 2d 1168, 1171 (D. Kan. 2002) (citing RESTATEMENT (SECOND) CONTRACTS § 24 and noting that the "meeting of the minds" subjective theory has been rejected and the prevailing approach is an objective theory)).

unless the terms of the contract are reasonably certain."[65]  Furthermore, "[i]n order to form a binding contract, there must be a meeting of the minds on all essential elements."[66]  The Court looks at the objective manifestations of the parties' intentions to determine "whether their outward expression of assent is sufficient to form a contract."[67]  "A breach of contract is a material failure of performance of a duty arising under or imposed by agreement."[68]

Under South Dakota law, the elements are similar.  Plaintiff must show (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages.[69]  In essence, "[a] contract is an agreement to do or not to do a certain thing."[70]  It may be either express or implied, but it cannot be both.[71]  An express contract comes into existence "when the parties mutually express an intent to be bound by specific terms and conditions" that are conveyed with words.[72]  "An agreement must be sufficiently definite to enable a court to give it an exact meaning."[73]  "[A]bsolute certainty is not required; only reasonable certainty is necessary."[74]  "To form a

---

[65]*Price v. Grimes*, 677 P.2d 969, 974 (Kan. 1984) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981)).

[66]*Albers v. Nelson*, 809 P.2d 1194, 1198 (Kan.1991) (citing *Sidwell Oil & Gas Co. v. Loyd*, 630 P.2d 1107, 1110 (Kan. 1981)).

[67]*Unified Sch. Dist. No. 446 v. Sandoval*, No. 101,145, 2009 WL 2766751, at *3 (Kan. Ct. App. Aug. 28, 2009) (citing *Sw. & Assocs., Inc. v. Steven Enters., LLC*, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004)).

[68]*MomsWin, LLC v. Lutes*, No. 02-2195-KHV, 2003 WL 21554944, at *8 (D. Kan. July 8, 2003) (citing *Tamarac Dev. Co. v. Delamater, Freund & Assoc., P.A.*, 675 P.2d 361, 363 (Kan. 1984)).

[69]*Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D. 2006).

[70]*Id.* at 892 (citations omitted).

[71]*Id.* (citations omitted).

[72]*Id.* (citations omitted).

[73]*Id.* (citations omitted).

[74]*Id.* (citations omitted).

contract, there must be a meeting of the minds or mutual assent on all essential terms."[75]  Mutual

assent does not exist "'unless the parties all agree upon the same thing in the same sense.'"[76]

Furthermore, consent must be given freely, it must be mutual, and it must be communicated.[77]

### a.    Written Contract Claim

The parties do not dispute that a binding written contract exists between them; defendant

extended credit under the Account Agreement and plaintiff used the credit provided under the

Account Agreement.  The parties do dispute, however, whether defendant breached the contract

by failing to give plaintiff notice prior to cancelling his credit card account.  Therefore, the Court

assumes a contract exists and limits its analysis to whether plaintiff has met his burden by

showing defendant's breach of contract.

The Account Agreement includes the following relevant provisions:

> **Default:**
> You default under this Agreement if you fail to pay, by its payment due
> date, the Total Minimum Due listed on each account statement; fail to
> make a payment to any other creditor when due; . . . exceed your credit
> line; . . . pay by automatic debit that is returned unpaid; or default under
> any other Card Agreement that you have with us.  If you default, we may
> close your account and demand immediate payment of the total balance.[78]
> . . .
> **Credit Reporting:**

---

[75]*Melstad v. Kovac*, 723 N.W.2d 699, 707 (S.D. 2006) (citing *Jacobson v. Gulbransen*, 623 N.W.2d 84, 90 (S.D. 2001)); *see also Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 832 (S.D. 2007) ("An agreement is the result of a mutual assent of two parties to certain terms, and, if it be clear that there is no consensus, what may have been written or said becomes immaterial.' 'There must be mutual assent or a meeting of the minds on all essential elements or terms to form a binding contract.'  Whether there is mutual assent is a fact question determined by the words and actions of the parties.") (internal citations omitted).

[76]*Melstad*, 723 N.W.2d at 707 (quoting *Read v. McKennan Hosp.*, 610 N.W.2d 782, 786 (S.D. 2000)) (quoting S.D. CODIFIED LAWS § 53-3-3).

[77]S.D. CODIFIED LAWS § 53-3-1.

[78](Doc. 33, Ex. B, Ex. 4, at 8.)

We may report your performance under this Agreement to credit reporting agencies. Including your failure to pay the Total Minimum Due by the payment due date.[79]

. . .

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the total balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice.[80]

. . .

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rates, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing cycle in which the change becomes effective. . . . Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms . . . .[81]

. . .

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.[82]

The rules of contract interpretation are the same in Kansas and South Dakota.

"Generally, if the language in a written contract 'is clear and can be carried out as written, there is no room for rules of construction.'"[83] "'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general

---

[79]*Id.* at 11.

[80]*Id.* at 12.

[81]*Id.*

[82]*Id.*

[83]*SOFCO, LLC v. Nat'l Bank of Kansas City*, No. 08-2366-JAR, 2009 WL 3053746, at *11 (D. Kan. Sept. 18, 2009) (citing *Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted)); *see also Kernelburner, L.L.C. v. MitchHart Mfg., Inc.*, 765 N.W.2d 740, 742 (S.D. 2009).

and common meaning, and a contract of this character is to be enforced according to its terms.'"[84]   Under both Kansas and South Dakota law, "[a] party to a contract has a duty to read the contract before signing it, and the failure to read a contract does not make the contract less binding."[85]

Here, the parties do not argue that any particular provision of the contract is ambiguous, and plaintiff has not alleged that he entered the contract under fraud, duress, or undue influence. Plaintiff admitted to signing the application for a Sears MasterCard.[86]   The application stated,

> By signing below, you certify that you have read and agree to the Sears MasterCard terms disclosed below which apply to your account and the terms of the Agreement that will be provided to you with your card(s) if credit is granted and you agree to pay all charges incurred under such terms.[87]

Under Kansas law, "[e]vidence of a cardholder's use of the card is sufficient to prove the existence of an agreement."[88]   The Court has reviewed the record, but plaintiff has failed to identify any contract provision defendant may have breached by cancelling his credit card

---

[84]*SOFCO*, 2009 WL 3053746, at *11 (quoting *Wagnon v. Slawson Exploration Co.*, 874 P.2d 659, 666 (Kan. 1994) (internal citations omitted)); *see also Discover Bank v. Stanley*, 757 N.W.2d 756, 762 (S.D. 2008) ("The court is to enforce and give effect to the unambiguous language and terms of the contract.") (citations omitted).

[85]*Entz v. B&B Airparts, Inc.*, No. 91,143, 2004 WL 1489076, at *2 (Kan. Ct. App. July 2, 2004) (citing *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002)); *see Albers v. Nelson,* 809 P.2d 1194, 1197 (Kan. 1991) ("[A] party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake.") (citations omitted); *see also In re Estate of Smid*, 756 N.W.2d 1, 13–14 (S.D. 2008) ("'[O]ne who accepts a contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation or other wrongful act by another contracting party.' . . . 'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.'") (internal citations omitted).

[86](Doc. 33, Ex. B, at 39:3-6.)

[87](Doc. 33, Ex. B, Ex. 3.)

[88]*Citibank (S.D.), N.A. v. Gumb*, Nos. 98,534, 98,535, 2008 WL 1722286, at *3 (Kan. Ct. App. Apr. 11, 2008) (citing *Cont'l Am. Corp. v. Pac. Balloon Co.*, 660 P.2d 84, 86 (Kan. Ct. App. 1983), and noting that "the existence of a contractual agreement may be evidenced by a pattern of conduct between the parties").

account without notice. Rather, the contract expressly and unequivocally states that the defendant has the right to close the cardholder's account "at any time for any reason without prior notice."[89]

In his deposition, plaintiff repeatedly alleged that defendant *should have* given him prior written notice explaining why the company was cancelling his credit.[90] When defense counsel asked whether plaintiff could produce any paperwork he received from Sears, plaintiff either admitted that he "threw them away," stated that he never received any paperwork, or stated he could not remember one way or the other.[91] When discussing the right of a credit card company to cancel a card, plaintiff stated:

> I think they're allowed to do it because they've been given that right in that fine print, they have been given the right to see if your credit is kind of weak with another creditor, they can stop your credit with them, whoever 'them' is. I think I'm right, but I'm not sure. I don't think it's fair.[92]

Even if defendant's conduct was not "fair" to the plaintiff, under the express terms of the contract, the Court cannot find that defendant's conduct in cancelling the account breached the contract.

Even after reviewing all of plaintiff's untimely submissions, the Court finds that plaintiff has not borne his burden of producing evidence sufficient to raise a genuine issue of material fact regarding whether defendant breached the written contract by cancelling the account without

---

[89](Doc. 33, Ex. B, Ex. 4, at 12.)

[90](Doc. 33, Ex. B, at 36:18–21.) Plaintiff alleges that defendant "should have sent me a letter stating, 'We stopped your credit because of X amount of time late.' But they didn't say that. They said because I was kind of falling behind. My other creditor credit was weak; therefore, they stopped it." *Id.* at 36:18–23, 38:4-10.

[91]*Id.* at 27:5–23.

[92]*Id.* at 37:17–23.

prior notice.  In fact, the contract expressly permits defendant to do so.  Furthermore, plaintiff admitted in his deposition that "I don't keep up with written statements."[93]  When defense counsel asked plaintiff whether he read the written billing statements he received in the mail showing how much he owed each month, plaintiff stated, "No.  I very seldom keep up with any kind of written statement."[94]  The Court grants defendant summary judgment on plaintiff's claim for breach of an express contract.

### b.      Oral Contract Claim

Plaintiff also appears to allege that defendant breached an "oral agreement" between himself and defendant.[95]  Defendant, however, argues that plaintiff's allegations are barred by the parol evidence rule.  The parol evidence rule states as follows:

> [W]here parties have carried on negotiations and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations the written agreement determines their rights. . . . 'When a contract is complete, unambiguous and free from uncertainty, parol evidence of *prior* or *contemporaneous* agreements or understandings, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible.'[96]

In this case, plaintiff appears to be arguing that an oral agreement arose *after* the written agreement, thus falling outside of the parol evidence rule.  Therefore, the Court will consider plaintiff's breach of oral agreement as well.

---

[93]*Id.* at 43:19–20.

[94]*Id.* at 43:17–25.

[95](Doc. 46, at 3.)

[96]*Mays v. Middle Iowa Realty Corp.*, 452 P.2d 279, 285 (Kan. 1969) (internal citations omitted) (emphasis added); *see also Butler Mach. Co. v. Morris Const. Co.*, 682 N.W.2d 773, 777 (S.D. 2004) ("By its express statutory language, the rule does not apply to conduct and statements taking place after a contract has been executed.  Thus, evidence of negotiations occurring after a written agreement will not be excluded by the parol evidence rule.") (quoting *Hofeldt v. Mehling*, 658 N.W.2d 783, 787 (S.D. 2003)).

First, the Court notes that the parties dispute the existence of an oral contract. In his deposition, plaintiff alleged that a "verbal agreement" was formed during a telephone conversation with a service representative wherein he granted permission to have his monthly payments made by direct withdrawals from his bank account.[97] He explained that he expected Sears would continue "taking the money out of my checking account until the debt is paid in full."[98] Defendant argues that plaintiff has not produced any evidence in support of his claim that an oral contract was formed.

The Court finds that plaintiff's allegations that an oral agreement was formed during a telephone conversation with a Sears representative are merely conclusory. Plaintiff has not provided any facts regarding who the representative was, when the conversation took place, what the terms of the contract were to be, or how the contract was to operate. Plaintiff did not provide an affidavit and did not cite to any authority or any portion of the record to support his claims. In his deposition, plaintiff explained that he understood the oral contract to be that, "as long as" he had monthly payments automatically debited from his bank account, "everything would be okay."[99] Plaintiff understood this to mean defendant would "let me keep the card."[100] However, when defense counsel asked plaintiff how he reached that conclusion, plaintiff pointed to the *written* contract and said, "That's what the contract reads here, this stuff here. They want you to

---

[97](Doc. 33, Ex. B, at 23:6–25:11.)

[98]*Id.* at 24:6–9. The Court can find no evidence in the record to determine when, precisely, the account was cancelled.

[99](Doc. 33, Ex. B, at 61:6–17.)

[100]*Id.* at 61:10–12.

pay your monthly payment.  You pay your monthly payment, you can keep your card."[101]

Plaintiff's testimony regarding the oral contract is inconsistent and insufficient to establish a claim for breach of oral contract.  Viewing the facts in the light most favorable to plaintiff, plaintiff spoke to a Sears representative who agreed to make automatic withdrawals from plaintiff's bank account.  But this does not establish the specific terms of an independent oral contract.  Plaintiff's allegation that an unidentified service representative assured him he would be "okay" is too vague to constitute language of offer and acceptance, or to demonstrate a meeting of the minds on specific contractual terms.  The Court is left to guess what specific contract terms plaintiff believed resulted from his telephone conversation based, not on the words communicated, but on plaintiff's expectations and assumptions.  Furthermore, plaintiff has not shown that defendant agreed to that understanding.  Although a *pro se* litigant's pleadings are to be construed liberally, the plaintiff retains "the burden of alleging sufficient facts on which a recognized legal claim could be based."[102]  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[103]  Furthermore, the Court is not required to "sift through the record in an attempt to find evidence of the alleged oral contract."[104]

---

[101]*Id.* at 61:13–17.

[102]*Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996).

[103]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).  A verified complaint may be treated as an affidavit under limited circumstances.  *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (stating that a court may treat a verified complaint "as an affidavit for purposes of summary judgment" if it satisfies the requirements for affidavits set out in Rule 56(e), but is not required to give such leniency if "'the allegations contained in the pleadings are merely conclusory.'") (citations omitted).  An affidavit that is "conclusory, vague, and/or lacking in foundation" is insufficient to support the conclusion that an agreement has been formed.  *Id.* (discussing *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 855 n.9 (10th Cir. 1999)).

[104]*Lantec, Inc. v. Novell, Inc.*, 306 F.3d at 1019 (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).

While the account was open, plaintiff did not dispute the charges that were made to his account,[105] and he does not appear to argue that the written Account Agreement is invalid. Furthermore, he does not cite to any law showing that the Agreement contravenes federal law, Kansas law, or South Dakota law.[106] Rather, he argues that the Account Agreement is a valid and binding contract between himself and defendant, but defendant breached the contract when it failed to give notice *before* stopping the direct withdrawal payments and *before* cancelling his account. "In summary judgment proceedings, the focus is on evidence, not allegations."[107] Plaintiff has not attached, submitted, or cited to any evidence in support of his claim sufficient to create a genuine issue of material fact on his claim for "breach of agreement."[108]

---

[105]More than three months after the summary judgment motion was fully briefed, and nearly five months after the deposition wherein plaintiff viewed the billing statements without objection, plaintiff filed a document stating, "Even before the breach, the Defendant apparently added late and no payments that do not truthfully represent the Plaintiff's best interest." (Doc. 57 at 5.) Per the terms of the Account Agreement, defendant was permitted to charge late fees in response to plaintiff's failure to make monthly payments by the due date. Plaintiff's objection that such fees were not in his "best interest" is overruled as irrelevant to the present lawsuit.

[106]*See* 20 AM. JUR. 2D *Credit Cards and Charge Accounts* § 32 (May 2009) ("The issuance of a credit card is only an offer to extend a line of open-account credit, and since it is unilateral and supported by no consideration, the offer may be withdrawn at any time, without prior notice, for any reasons or, indeed, for no reason at all, and its withdrawal breaches no duty–for there is no duty to continue it–and violates no rights.").

Assuming, *arguendo*, that plaintiff alleges violations of the notice and disclosure requirements of the Truth in Lending Act (TILA), and the Equal Credit Opportunity Act (ECOA), the Court is unable to conclude–from the facts provided by the parties–that defendant's failure to give notice before cancelling plaintiff's account violated any statutory provision. In fact, from the Court's review, neither statute requires defendant to give written notice *prior* to cancelling a cardholder's account under these circumstances. Furthermore, plaintiff has not produced sufficient facts or evidence to prove a violation of the Fair Credit Reporting Act (FCRA). *See* 15 U.S.C. § 1681m, *et seq.* Rather, he admits he received some kind of notice from defendant, including the reason defendant cancelled his account. Neither party, however, refers to any of these statutes or raises these arguments in this case.

[107]*Ruleford v. Tulsa World Publ'g. Co.*, 266 F. App'x 778, 783 (10th Cir. 2008) (citing *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007)) (internal citations omitted).

[108]*See Iverson v. City of Shawnee, Kan.*, 332 F. App'x 501, 502 (10th Cir. 2009) (" . . . we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. However, we caution that mere conclusory allegations are insufficient to establish an issue of fact under Fed. R. Civ. P. 56.") (quoting *Barber ex rel. Barber v. Colo. Dep't of Rev.*, 562 F.3d 1222, 1227–28 (10th Cir.

Furthermore, even if the oral contract to allow for payment by direct withdrawal was enforceable and of unlimited duration, plaintiff fails to show how the oral contract was intended to modify the written contract. "[A]n agreement to modify a contract can be implied from the parties' conduct if they do not continue to act according to the original terms of the contract."[109] However, plaintiff has produced no evidence showing either party intended to act contrary to the terms of the original written contract. Rather, as discussed above, defendant had the contractual authority to cancel the contract "at any time for any reason." Plaintiff argues merely that such action is not "fair."[110] The Court finds, without further evidence, the alleged oral modification, even if valid, "did not alter the terms of the written contract or affect the parties' obligations under the contract."[111] At most, plaintiff has shown a subsequent agreement regarding plaintiff's method of payment, which supplemented the terms of the written contract. Thus, defendant's decision to cancel the credit card account was not a breach of contract.

Discovery in this case was completed April 16, 2009.[112] Plaintiff bears the burden of proof on the breach of contract claim, but admits he discarded any paperwork he received from defendant. "If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted."[113] The Court finds that, based

---

2009)).

[109]*Hutton Contracting Co. v. City of Coffeyville*, No. 02-4130, 2004 WL 2203449, at *8 (D. Kan. Sept. 24, 2004) (citing *Galindo v. City of Coffeyville*, 885 P.2d 1246, 1253 (Kan. 1994)).

[110](Doc. 33, Ex. B, at 37:9–23.)

[111]*See Entz v. B&B Airparts, Inc.*, 92 P.3d 613 (Table), No. 91,143, 2004 WL 1489076, at *5 (Kan. Ct. App. July 2, 2004) (affirming district court's entry of summary judgment on breach of contract claim).

[112](Doc. 46, at 12.)

[113]*Spires v. Sunflower Elec. Co-op., Inc.*, 280 F. Supp. 2d 1271, 1276 (D. Kan. 2003) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994)).

on the facts provided by defendant and not controverted by the plaintiff, plaintiff has failed to raise a genuine issue of material fact for trial and summary judgment is appropriately granted to defendant on plaintiff's claim for "breach of agreement."

## 2. Discontinuance of Credit Card

The Court finds plaintiff's claim for discontinuance of credit card is analogous to his breach of contract claim, analyzed above. In fact, plaintiff's testimony establishes that there is no genuine issue as to any material fact on plaintiff's second claim.[114] In deposition, plaintiff was asked whether there was any law prohibiting credit card companies from revoking credit cards, and plaintiff responded, "I think they're allowed to do that, even though it go against my grain. . . . I think they're allowed to do it because they've been given that right in that fine print."[115] He stated, "Sears breached the agreement with me – even though they had the prerogative to take my credit card back, they took it back without notice to me."[116] Because plaintiff has failed to raise a genuine issue of material fact on his claim for discontinuance of credit card, the Court grants summary judgment in favor of defendant.

## 3. Negligence

Plaintiff alleges defendant was negligent in failing to notify him prior to closing his account. Defendant argues that a contract action cannot simultaneously be brought as a tort action. Negligence requires a showing of the following elements: "(1) the existence of a duty;

---

[114]*See Samuels v. Old Kent Bank*, No. 96-v-6667, 1997 WL 458434, *6 (N.D. Ill. Aug. 1, 1997) (holding that, because credit card agreement permitted issuer to terminate privileges under the agreement "at any time for any reason," issuer did not breach its contract by doing so).

[115](Doc. 33, Ex. B, at 37:13–19.)

[116]*Id.* at 56:2–5.

(2) breach of that duty; (3) injury; and (4) a causal connection between the duty breached and the injury suffered."[117]  Under Kansas law, "[a] plaintiff may not frame a contract action as a tort action or a tort action as a contract action merely to avoid the legal limitation of one particular cause of action."[118]  Kansas courts distinguish between the two claims based on "the nature of the duty sought to be enforced."[119]  Breach of a duty arising from "the specific terms of a negotiated agreement" is an action in contract.[120]  "In contrast, where the law imposes a duty, an action for a breach of such duty is properly brought in tort."[121]

As discussed above, plaintiff has failed to present, or support with evidence, a valid claim for breach of contract.  He is not precluded from bringing a negligence claim, as defendant argues; however, plaintiff has failed to point to any law imposing on defendant the duty to give a cardholder written notice prior to closing his account.[122]  Here, the rights and obligations of the parties are defined by their contract.  Moreover, the parties have not pointed the Court to any law prohibiting defendant from closing a cardholder's credit account when it has express authority to do so in the terms of its contract.  Without factual evidence or legal authority to show that

---

[117]*Seeber v. Ebeling*, 141 P.3d 1180, 1185 (Kan. Ct. App. 2006) (citations omitted).

[118]*10th St. Med., Inc. v. Kansas*, 210 P.3d 670, 676 (Kan. Ct. App. 2009) (citing *Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 889 (Kan. 1976); *Jeanes v. Bank of Am., N.A.*, 191 P.3d 325, 330 (Kan. 2008)).

[119]*Id.* (citing *KPERS v. Reimer & Koger Assocs., Inc.*, 936 P.2d 714, 718 (Kan. 1997)); *see also Fisher Sand & Gravel Co. v. S.D. by & through S.D. Dep't of Transp.*, 558 N.W.2d 864, 868 (S.D. 1997) ("'Where a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant had a duty to perform the act usually must be determined from the terms of the contract.  The defendant's duty will not be extended beyond the duties described in the contract.'") (quoting *Holubek v. City of Chicago*, 497 N.E.2d 348, 350 (Ill. Ct. App. 1986)).

[120]*See supra* note 119.

[121]*See supra* note 119.

[122]*See supra* note 106.

defendant owed this alleged duty to plaintiff independent of–and in contrast to–the express terms of its contract, the Court is unable to conclude that defendant's conduct was negligent.[123] Accordingly, defendant's motion for summary judgment is granted on this claim.

### 4. Telephone Harassment

Plaintiff alleges defendant's debt collectors harassed him with repeated telephone calls. Defendant argues that no such cause of action exists. Under Kansas law, it is a misdemeanor to commit telephone harassment.[124] However, it has long been established that a private party has no standing to enforce criminal sanctions, and the Kansas Legislature did not expressly create or grant a private cause of action under the statute.[125]

Furthermore, although plaintiff does not cite to or discuss the Fair Debt Collection Practices Act ("FDCPA"),[126] the Court has reviewed its provisions. The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[127] Such prohibited conduct includes, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called

---

[123]*See Fisher Sand & Gravel Co.*, 558 N.W.2d at 869 & n.4; *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800 (Utah 1985).

[124]K.S.A. § 21-4113.

[125]*See Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (noting that private citizens cannot compel enforcement of criminal law); *Higgins v. Neal*, No. 94-1154, 1995 WL 216920, at *1 (10th Cir. April 12, 1995) (collecting cases). The Court notes, however, that plaintiff is not left without a remedy. He may refer his criminal complaint to the United States Attorney's Office or the Kansas Attorney General. *Higgins*, 1995 WL 216920, at *2 n.3 (citing Herbert B. Chermside, Jr., Annotation, *Power of Private Citizen to Institute Criminal Proceedings Without Authorization or Approval By Prosecuting Attorney*, 66 A.L.R. 3d 732, 734 n.7, 735 n.10 (1975)).

[126]15 U.S.C. § 1692, *et seq.*

[127]*Id.* § 1692d.

number."[128]

There is a threshold issue that must be resolved before the FDCPA is applied in this case. The term "debt collector," to which the statute applies, is defined by 15 U.S.C. § 1692a(6) as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.[129]

Plaintiff bears the burden of proving defendant's debt collector status.[130]  However, "it appears a creditor using his own name does not qualify as a debt collector."[131]

Plaintiff has not alleged any facts showing defendant is a "debt collector."[132]  Plaintiff inconsistently asserts that the phone calls came from representatives of Sears Roebuck & Company, Inc. and representatives of Citibank.  Citibank alleges the calls were made by its own representatives to collect its own debts.  Plaintiff has not specifically controverted defendant's allegations on this point, and plaintiff makes no allegations that Citibank was using another name in order to collect its debts.  Moreover, although plaintiff claims defendant made

---

[128]*Id.* § 1692d(5).

[129]*Id.* § 1692a(6).

[130]*Allen v. Nelnet, Inc.*, No. 06-cv-00586, 2007 WL 2786432, at *8 (D. Colo. Sept. 24, 2007) (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004)).

[131]*Houck v. Local Fed. Sav. & Loan, Inc.*, No. 93-6046, 1993 WL 191818, at *2, *4 (10th Cir. June 1, 1993); *see also Allen v. Nelnet, Inc.*, No. 06-cv-00586, 2007 WL 2786432, at *9 (D. Colo. Sept. 24, 2007)

[132]*See, e.g., Brooks v. Citibank (S.D.), N.A.*, No. 08-35574, 2009 WL 2870046, at *1 (9th Cir. Sept. 8, 2009) (finding that Congress did not intend to include "creditors" within the Act and finding Citibank was not a "debt collector" under the FDCPA); *Schlotman v. Citibank (S.D.), N.A.*, No. 06-0803, 2007 WL 1425474, at *1 (W.D. Mo. May 10, 2007) (same); *Sankowski v. Citibank (S.D.), N.A.*, No. 06-cv-02469, 2006 WL 2037463, at *1–*2 (E.D. Pa. July 14, 2006) (same); *Citibank (S.D.) N.A. v. Sablic*, 55 A.D.3d 651, 653 (N.Y. App. Div. 2008) (same).

"harassing phone calls" five times a day which "caused Plaintiff to suffer mental anguish," he does not articulate facts or produce evidence showing what times of day he received the phone calls, how long the calls persisted, who allegedly made the calls, or what precisely was said during any particular phone conversation. Rather, in his deposition, plaintiff told defense counsel he did not remember how many times a day he received calls because "I wasn't counting."[133] When asked the content of those phone conversations, plaintiff explained, "[I]t was a typical debt collector. 'I'm here to collect a debt,' and they tell me the name of the company and how much money they wanted. And that's all I can remember."[134]

Plaintiff has not alleged facts or produced evidence showing that defendant is a "debt collector" or that defendant's phone calls constituted harassment under the FDCPA. The Court grants summary judgment to defendant on plaintiff's claim for "telephone harassment."

### C. *Defendant's Claims*

#### 1. **Breach of Contract**

The elements and law for breach of contract are set out above.[135] To prevail on summary judgment, therefore, defendant must show no genuine issue as to any material fact on all elements of its breach of contract claim. Plaintiff does not dispute that he received a credit card from defendant and used the account to make purchases. He admits there is a binding written contract between the parties that governs their rights and obligations. Furthermore, plaintiff admits he was repeatedly late making payments to defendant on his credit card account and

---

[133](Doc. 33, Ex. B, at 14:23–24.)

[134](Doc. 33, Ex. B, at 15:9–15.)

[135]*See supra* Part IV.B.1.

ignored statements that were sent to him.[136]

The contract expressly states a cardholder "must pay at least the Total Minimum Due by the payment due date."[137]  A cardholder is in default when "you fail to pay, by its payment due date, the Total Minimum Due listed on each account statement; . . . [or] exceed your credit line."[138]  If a cardholder defaults, the issuer may "close your account and demand immediate payment of the total balance."[139]

The parties had a standing contract between them, whereby plaintiff made purchases on the account and defendant submitted regular billing statements to plaintiff, including various finance charges and interest rates.  Plaintiff admitted to receiving multiple billing statements, but did not review them.  While his account was open, plaintiff did not dispute any specific charges made to his account.  Under the Account Agreement, plaintiff was obligated to make regular payments on his account.

Defendant attached to its motion for summary judgment, monthly billing statements addressed to plaintiff, listing payments due from July 25, 2006 until November 19, 2008, including numerous and repeated late fees incurred by plaintiff for failure to pay on time.[140]

---

[136](Doc. 33, Ex. B, at 30:1–2, 32:20-21, 36:4-5, 43:17–24.))

[137](Doc. 33, Ex. B, Ex. 4, at 6.)

[138]*Id.* at 8.

[139]*Id.*

[140]Nearly three months after the close of summary judgment briefing, plaintiff filed a document which appeared to raise an evidentiary objection to the billing statements attached to defendant's motion for summary judgment.  Plaintiff states merely, "The Defendant created a copy of Plaintiff's accounts after the facts, creating misleading information that should be rejected from the court file."  (Doc. 57 at 4.)  If construed as an objection, the Court notes plaintiff's objection was made nearly five months after the deposition wherein he viewed the billing statements without objection and repeatedly stated he could not dispute the balances listed.  (Doc. 33, Ex. B, at 71:22–72:7.)  In fact, the following exchange took place:

Plaintiff admitted to making multiple late payments. Furthermore, plaintiff has failed to make payments from July 2008 until October 2008, over which time late fees have accumulated. Thus, under the terms of the Account Agreement, plaintiff is in default.

There is no genuine issue of material fact in dispute on defendant's breach of contract claim, and thus, the Court grants summary judgment to defendant. Defendant is justified in claiming payment of the October 2008 balance listed as $6,474.81, plus prejudgment interest. Under K.S.A. § 16-201, a creditor may "receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due." Defendant is therefore awarded $6,474.81, plus prejudgment interest at the statutory rate of ten percent.

---

> Q. I'm handing you what's been marked into evidence as Exhibit 2. Do you recognize Exhibit 2?
> A. This is a typical statement – invoice, billing invoice that come from Sears Gold MasterCard.
> Q. Do you see at the top there where it says "Noland McKenzie," and I notice it has a "d" at the end of your name.
> A. That's not my name. Drop the "d."
> Q. Right. Did Sears incorrectly spell your name on your credit card?
> A. I'm not sure.
> Q. Do you recognize that that's your account number with Sears?
> A. No. I can't recognize it.
> Q. Do you have any reason to dispute that these are account statements that were issued to you by Sears?
> A. No. And this year is 2006.
> Q. Right. When did you open your –
> A. And how would you expect me to identify this?
> Q. Well, I'm representing to you that these were the account statements that you received from Sears.
> A. It looks like this.

(Doc. 33, Ex. B, at 31:3–32:4.) Although plaintiff's testimony was equivocal, plaintiff admitted to receiving multiple billing statements that he later threw away, *id.* at 71:7–12, he was able to identify the billing statements he was shown at the deposition, *id.* at 31:3–8, and he did not dispute the content of any of the billing statements he viewed. Despite his equivocation as to whether he *knew* the precise balance on his account, *id.* 36:6–10, when defense counsel showed him a billing statement from November 19, 2008, he stated, "If your payment is for that date, that would be right. That would be exactly what I would owe if that payment date is right. *Id.* at 72:1–6. Because plaintiff's objection to the billing statements is untimely under D. Kan. Rule 6.1(b)(1), and fails to explain his reasons for raising this objection after the close of summary judgment briefing and nearly five months after testifying to their content, the Court overrules his objection as insufficient to controvert the facts presented by defendant. Furthermore, the Court admonishes defendant for neglecting to ensure complete authentication by affidavit.

## 2.      Account Stated

As an alternative to its breach of contract claim, defendant alleges there was an account stated between plaintiff and defendant.  As discussed above, the Court will apply both Kansas and South Dakota law to defendant's claim for account stated.  Under Kansas law,

> 'An account stated is an agreement, express or implied, between parties who have had previous transactions with each other, fixing and determining the amounts due in respect to such transactions, and, when made, such account stated becomes a new agreement and takes the place of the obligations resting upon either party by reason of the prior account.'[141]

Once the parties acknowledge an existing liability, "the law implies a promise to pay the balance thus acknowledged to be due."[142]  It is an agreement between parties who have had prior monetary dealings "that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance."[143]  There is a "meeting of the minds . . . upon the correctness of the account" when one party states the account and the other party acquiesces therein.[144]  Neither the statement of the account, nor the acquiescence to the statement need be in writing.[145]  "An account may become stated also where the statement of dealings between two persons is made out by one of them and submitted to the other, who acquiesces in its correctness."[146]  Acceptance may also be "inferred

---

[141]*Cont'l Am. Corp. v. Pac. Balloon Co., Inc.*, 660 P.2d 84, 86 (Kan. Ct. App. 1983) (quoting *Dettmer v. Fulls*, 251 P. 396, 397 (Kan. 1926) (internal citations omitted)).

[142]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

[143]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

[144]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

[145]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

[146]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

from retaining the account a sufficient time without making objection."[147]  Furthermore, in

proper circumstances, interest may be considered part of an account stated.  "[A]n agreement to

pay interest can be implied from (1) a seller's notice to a buyer that interest will be charged on

an unpaid account and (2) the buyer's acquiescence therein (through payment, a course of

dealings or otherwise)."[148]

       Under South Dakota law, the law is largely the same:

> To constitute an account stated the transaction must be understood by the
> parties as a final adjustment of the respective demand between them and
> the amount due.  The binding force of an account stated will not be given
> to the mere furnishing of an account which was not with a view of
> establishing a balance due, or finally adjusting the matters of account
> between the parties. . . . 'To make an account stated, there must be a
> mutual agreement between the parties as to the allowance or disallowance
> of their respective claims, and to establish such an accounting so as to
> preclude a party from impeaching it, save for fraud or mistake, there must
> be proof of assent to the account as rendered, either expressed or
> implied.[149]

"An 'account stated' is an agreement between the parties to an account that the items included

therein are correct, and agreeing upon the amount due."[150]

       On summary judgment, to prove an account stated, "the movant must establish every

element of its claim or defense by sufficient, competent evidence."[151]  Under South Dakota law,

"[t]he binding force of an account stated will not be given to the mere furnishing of an account

---

[147]*Id.* (quoting *Dettmer*, 251 P. at 397 (internal citations omitted)).

[148]*Jerry L. Phillips, Inc. v. Ratley*, 627 P.2d 339, 343 (Kan. Ct. App. 1981).

[149]*Hood v. Sioux Steel Co.*, 287 N.W. 636, 637 (S.D. 1939).

[150]*Starr v. Baldwin Piano Co.*, 238 N.W. 877, 879 (S.D. 1931).

[151]*Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 655 (D. Colo. 2005) (citing Fed. R. Civ. P. 56(e); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (internal citations omitted).

which was not with a view of establishing a balance due, or finally adjusting the matters of account between the parties."[152] Both Kansas and South Dakota require a claimant to show that the parties came to an agreement on all charges incurred, including any allowances and disallowances, and the final balance due, with a view toward establishing finality in the matters between them. Defendant has not borne its burden of showing this degree of precision in the meeting of the minds between plaintiff and defendant. While the evidence is sufficient to show a breach of contract under the terms of the Account Agreement, defendant has failed to produce evidence showing a solid meeting of the minds on all monetary transactions sufficient to establish an account stated between the parties.

The Court denies defendant's motion for summary judgment on its claim for account stated. However, the Court notes that its ruling does not affect the outcome, as defendant is awarded the balance of plaintiff's account, plus prejudgment interest, under its breach of contract claim.

### 3. Attorney Fees and Costs

Finally, defendant asserts it is entitled to attorneys' fees and costs. In diversity cases, the right to recover attorneys' fees is substantive in nature and governed by state law.[153] The parties do not dispute the validity of the contract which binds them. Furthermore, defendant has prevailed on plaintiff's claims as well as on its own claim for breach of contract. Under both Kansas and South Dakota law, attorneys' fees may be awarded in accordance with a statute or a

---

[152]*Hood*, 287 N.W. at 637.

[153]*475342 Alberta, Ltd v. Starfire,* No. 95-2083-GTV, 1997 WL 457697, at *1 (D. Kan. July 31, 1997) (citing *Pub. Serv. Co. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1520 (10th Cir. 1994)).

written agreement between the parties.[154]  "[T]he purpose of a contract-based award 'is to give the parties the benefit of the bargain, and the court's responsibility is to enforce that bargain.'"[155] "[T]he court may deny or reduce the requested contractual-based fees if such an award would be inequitable or unreasonable."[156]

Here, the Account Agreement between the parties determines whether defendant may have a right to attorneys' fees in this action.  The Agreement states, "If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the cost and expenses of any legal action, to the extent permitted by law."[157]

Because the right to attorneys' fees is governed by contract in this case, defendant's claim to attorneys' fees is a matter of contract interpretation.  When a contract is complete and unambiguous, the court must give effect to its plain meaning.[158]  Whether a contract is

---

[154]*See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp. 2d 1250, 1278–79 (D. Kan. 2003) ("Because plaintiffs' fee request stems from a contractual fee provision, plaintiffs' request is subject to far less scrutiny than a request made pursuant to a fee-shifting statute and the court does not possess the same degree of equitable discretion to deny such fees as it has when applying a statute providing for a discretionary award."); *Assman v. J.I. Case Credit Corp.*, 411 N.W.2d 668, 671 (S.D. 1987) ("[P]arties may generally contract for payment of attorney's fees.") (citations omitted); *see also Citibank (S.D.) N.A. v. C & S Wholesale Grocers, Inc.*, Case No. 2:08-cv-224, 2009 WL 688991, at *3–*5 (D. Vt. March 9, 2009) (analyzing South Dakota law on a similar contractual provision for attorneys' fees).

[155]*Westar Energy, Inc. v. Lake*, 493 F. Supp. 2d 1126, 1145 (D. Kan. 2007) (citing *United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987)), *rev'd in part on other grounds*, 552 F.3d 1215 (10th Cir. 2009).

[156]*Id.*

[157](Doc. 33, Ex. B, Ex. 4, at 9.)

[158]*Wagnon v. Slawson Exploration Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 672 P.2d 1228, 1238 (Kan. Ct. App. 1993)); *see also Prunty Const., Inc. v. City of Canistota*, 682 N.W.2d 749, 756 (S.D. 2004) (quoting *Carstensen Contracting, Inc. v. Mid-Dakota Rural Water Sys., Inc.*, 653 N.W.2d 875, 877 (S.D. 2002)).

ambiguous is a question of law for the court.[159]  To be ambiguous, a contract must contain

provisions or language of doubtful or conflicting meaning, as gleaned from a natural and

reasonable interpretation of its language.[160]  An ambiguity in a contract will be construed against

the drafter.[161]

Defendant does not spend substantial time developing this argument in its brief, but

concludes that legal efforts to defend against the action brought by plaintiff are within the terms

of the contract.  The express language of the Account Agreement, however, states that attorneys'

fees may be recovered when "collection of your account" is "refer[red]" to a "lawyer who is not

our salaried employee."  Defendant has produced no evidence showing that defense counsel is

"not our salaried employee," and has produced no evidence showing the action was "referred."

Furthermore, defendant has not shown that, when a lawsuit is brought by the *cardholder*,

defendant's effort to *defend against* the lawsuit also comes within the meaning of a "*collection*"

on plaintiff's account.[162]  Defendant has produced no evidence proving any of the elements of its

claim for attorneys fees in this case.  Its allegations are conclusory only.

Because defendant has not produced a record on the issue of attorneys' fees sufficient to

support its claim, the Court denies summary judgment on defendant's claim for attorneys' fees.

---

[159]*Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992); *see also In re J.D.M.C.*, 739 N.W.2d 796, 806 (S.D. 2007).

[160]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted); *see also Jones v. Siouxland Surgery Ctr. L,P.*, 724 N.W.2d 340, 345 (S.D. 2006).

[161]*Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1126 (Kan. 2002); *see also State v. Pursley*, 729 N.W.2d 351, 355 (S.D. 2007).

[162]*See Shwartz v. Am. Express Travel Related Servs., Co., Inc.*, Case No. 01-646, 2003 WL 1824657, at *4–*5 (E.D. La. Apr. 8, 2003) (finding that, even though defendant prevailed on its motion for summary judgment, under the express terms of the cardholder agreement, it was only entitled to recover attorneys' fees incurred on its counterclaims because it was *defending* against a lawsuit brought by a cardholder).

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment

(Doc. 32) is granted in part and denied in part.  Summary judgment is **GRANTED** on plaintiff's

claims for breach of agreement, discontinuance of credit card account, negligence, and telephone

harassment, and on defendant's claim for breach of contract.  Defendant is awarded $6,474.81 in

damages, plus prejudgment interest at the Kansas statutory rate.  Summary judgment is **DENIED**

on defendant's claims for account stated and attorneys' fees.

**IT IS SO ORDERED.**

Dated:  <u>December 16, 2009</u>

<u> S/ Julie A. Robinson          </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE